UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN C.,

                                         Plaintiff,

v.                                                                                  3:22-cv-01292 (LEK/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     JUSTIN M. GOLDSTEIN, ESQ.
6000 N. Bailey Ave., Suite 1a
Amherst, NY 14226
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION           FERGUS J. KAISER, ESQ.
OFFICE OF THE GENERAL COUNSEL
6410 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      Brian C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.) This matter was referred to the undersigned for a report and recommendation by the Honorable Lawrence E. Kahn, United States Senior District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 5.) Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18. (Dkt. Nos. 7, 9, 10.) Oral argument was not heard. For the reasons discussed below, the Court

recommends Plaintiff's motion be granted, Defendant's motion be denied, and the decision of the Commissioner be reversed and remanded for further administrative proceedings.

I.   PROCEDURAL HISTORY

On September 28, 2020, Plaintiff protectively filed an application for DIB, alleging disability beginning June 15, 2018, due to complications from prostate cancer surgery, advanced disc disease, and vertigo. (T. 45, 188-92, 216, 220.[1]) His claim was denied initially on December 10, 2020, and denied again after reconsideration on March 11, 2021. (T. 52, 62.) Plaintiff's subsequent request for a hearing was granted. (T. 119.) On July 30, 2021, Plaintiff and a vocational expert testified by telephone before Administrative Law Judge ("ALJ") Jeremy G. Eldred. (T. 27-43.) The ALJ issued an unfavorable decision on September 2, 2021. (T. 10-19.) The Appeals Council denied Plaintiff's request for review on October 4, 2022, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.) This action followed. (Dkt. No. 1.)

II.  LEGAL STANDARDS

A.   **Standard of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the

---

[1] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its own interpretation of the administrative record for Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

**B.** Determination of Disability[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he should be hired if he applied for work.

§ 423 (d)(2)(A).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[2] The requirements for establishing disability under Title II, 42 U.S.C. § 423(d) and Title XVI, 42 U.S.C. § 1382c(a)(3) are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id.*

### III.   FACTS

Plaintiff was born in 1962. (T. 31.) He is a high school graduate and completed two years of college. (T. 32.) From 2002 until April 2018, Plaintiff worked as a technical support engineer. (T. 32, 226.) His date last insured is December 31, 2019. (T. 12.)

During the hearing, Plaintiff reported he was unable to work due to his history of prostate cancer, a back impairment, and carpal/cubital tunnel syndrome. (T. 33-34.) He stated he was diagnosed with prostate cancer after experiencing problems urinating in December 2017. (T. 34.) Thereafter, he underwent surgery and radiation. *Id*. At the time of the hearing, his prostate cancer was in remission. *Id*. Plaintiff also testified he has back discomfort and cannot stand for more than thirty minutes. (T. 35.) He takes a muscle relaxer and over the counter medication for his back pain. (T. 36.) Plaintiff's doctor suggested surgery. (T. 36.)

In the function report completed in November 2020, Plaintiff indicated his "bad back limits how long I can stand or sit w/o pain." (T. 233.) He describes his day as "wake up w/ headache and back pain. Have coffee, surf internet & FB, Shower. Daily things—eat, watch tv, sleep. Fall asleep in recliner cause it hurts to get up." (T. 234.) His back pain affects his ability to fall asleep. *Id*. He can make coffee, toast, and reheat leftovers. (T. 236.) He "can't stand

5

long to prepare foods that need continuous attention." *Id*. Plaintiff can spend "limited time" on house and yard work such as "washing a few dishes, quick vacuum, mowing lawn with ride-on mower . . . due to back soreness and tiredness." *Id*. His wife does most of the household cleaning and he asks friends for help when repairs were needed. *Id*. He used to enjoy walking and playing a musical instrument. *Id*. Plaintiff's impairments affect his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, concentrate, and use his hands. (T. 238.)

## IV. THE ALJ'S DECISION

Applying the five-step disability analysis, the ALJ first determined Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of June 15, 2018, through his date last insured of December 31, 2019. (T. 12.) At step two, the ALJ found Plaintiff has the following severe impairments: history of prostate cancer, status post prostatectomy; a subcutaneous lipoma of the right posterior neck, status post-surgical excision in May 2019; degenerative changes of the cervical, thoracic, and lumbar spine; and obesity. (T. 12-13.) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 13-14.)

Next, the ALJ concluded, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).³ (T. 15.) At step four, the ALJ found, through the date last insured, Plaintiff was capable of performing his past relevant work as a help desk representative. (T. 18.) Thus, the

---

³ Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting capacity should generally total about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3.

ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 15, 2018, the alleged onset date, through December 31, 2019, the date last insured.  *Id.*

## V.   DISCUSSION

Plaintiff argues "the ALJ erred when failing to identify substantial evidence supporting the residual functional capacity, erred when failing to evaluate the medical opinions pursuant to the regulations, and erred in his evaluation of Plaintiff's subjective allegations." (Dkt. No. 7 at 1.)  The Commissioner contends the ALJ properly assessed the opinion evidence and RFC determination was supported by substantial evidence.  (Dkt. No. 9 at 2.)  In reply, Plaintiff argues the ALJ failed to consider the degenerative nature of Plaintiff's impairments and failed to consider his back treatment was delayed due to his treatment for cancer.  (Dkt. No. 10 at 1.)

### A.   RFC

The RFC is an assessment of "the most [Plaintiff] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as the plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. § 404.1545; *see*

*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

"[T]here is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC. Rather, the ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole." *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *5 (N.D.N.Y. Sept. 27, 2019) (citing cases). It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); *Shyla D. v. Kijakazi*, No. 3:20-CV-1295 (DJS), 2022 WL 798158, at *5 (N.D.N.Y. Mar. 16, 2022) ("[T]he RFC is an administrative finding reserved to the Commissioner and not a medical finding.") (citation omitted); *Breinin v. Colvin*, No. 5:14-CV-01166 (LEK/TWD) 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015).

**B.** Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[4] and several of the prior Social Security Rulings, including

---

[4] Plaintiff's application was filed September 28, 2020. (T. 198.) Thus, the new regulations apply in this case.

SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 Fed. Reg. 5844, at 5867-68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. § 404.1520c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. § 404.1520c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id*. § 404.1520c(a), (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. § 404.1520c(b)(2).  With respect to "supportability," the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id*. § 404.1520c(c)(1).  Concerning "consistency," the regulations provide "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

9

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id*. § 404.1520c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id*. § 404.1520c(b)(3).

**C.** Summary of Opinion Evidence

In December 2020, and February 2021, the non-examining state agency consultants assigned to evaluate Plaintiff's claim at the initial and reconsideration levels, R. Dickerson, M.D., L. Hausem Psy.D., S. Padmaraju, M.D., and E. Kamin, Ph.D., assessed there was insufficient evidence to establish disability prior to the date last insured of December 31, 2019. (T. 17, 48-49, 58-59.) Plaintiff was not consultatively examined. The bulk of the administrative evidence, including the two medical source statements from Jonathan Gdovin, RPA-C, was developed at the hearing level. (T. 17, 305-07, 428-30.) As discussed herein, the ALJ found PA Gdovin's opinions unpersuasive. (T. 17.)

In the first medical source statement, dated May 26, 2021, PA Gdovin indicated he had treated Plaintiff twice—at an initial appointment on February 10, 2021, and again on February 24, 2021. (T. 305, 308, 310.) PA Gdovin diagnosed Plaintiff with spinal stenosis, and opined Plaintiff could walk less than one block without rest or severe pain. (T. 305.) Plaintiff could sit or stand for fifteen minutes at one time. *Id*. He could sit for a total of less than two hours and stand/walk for less than two hours in an eight-hour working day with normal breaks. *Id*. He

10

could lift and carry less than ten pounds occasionally and ten pounds rarely. (T. 306.) He could occasionally reach. (T. 307.) PA Gdovin indicated Plaintiff would likely be absent from work more than four days per month on average because of his impairments or treatment. *Id*. He would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed for even simple work tasks. *Id*. PA Gdovin assessed Plaintiff's limitations had existed and persisted to the same degree since at least December 30, 2019. *Id*.

In the second medical source statement, dated June 16, 2021, PA Gdovin noted he had treated Plaintiff for approximately three months for spinal stenosis. (T. 428.) Plaintiff's prognosis was "poor." *Id*. The second medical source statement largely mirrors the first opinion. (*Compare* T. 305-07 *with* T. 428-30.) Again, PA Gdovin indicated Plaintiff's limitations had existed and persisted to the same degree since at least December 30, 2019. (T. 430.)

The accompanying medical records indicate PA Gdovin treated Plaintiff on February 10, 2021, for lower back pain that radiated into the right leg and for daily muscle spasms. (T. 308.) Plaintiff reported he had symptoms for years but his 2018 cancer diagnosis and treatment "put his back treatment on hold." *Id*. He had treated with physical therapy without relief and was taking Cyclobenzaprine. *Id*. His pain level was at a four. *Id*. On examination, there was minimal pain to palpation along the lumbosacral junction. *Id*. Forward flexion and extension caused discomfort. *Id*. Straight leg raise test was positive on the right leg. *Id*. X-rays of the lumbar spine showed multilevel disc degeneration. (T. 309.) PA Gdovin ordered an MRI of the lumbar spine which revealed: lumbar rotoscoliosis, multilevel degenerative changes without high-grade spinal stenosis or disc herniation, and moderate L5-S1 degenerative neural foraminal stenosis. (T. 309-13.) The February 19, 2021, MRI was compared to May 17, 2018, x-rays of

the lumbosacral spine which indicated: (1) scoliosis in the lumber spine convex to the right side, 5 non rib bearing lumbar vertebral bodies, and narrowed disc spaces due to multilevel degenerative change.  (T. 312, 529.)

On February 24, 2021, Plaintiff treated with PA Gdovin again.  (T. 310-11.)  On examination, there was minimal pain to palpation along the lumbosacral junction.  (T. 310.)  Forward flexion and extension caused discomfort.  *Id*.  Straight leg raise test was positive on the right leg.  *Id*.  PA Gdovin noted the MRI showed degenerative scoliosis multilevel spinal stenosis from L1-S1.  *Id*.  PA Gdovin assessed spinal stenosis, lumbar region with neurogenic claudication.  *Id*.  PA Gdovin discussed the possibly of fusion from L1-S1, but Plaintiff did not want to undergo surgery at that time.  *Id*.

### D. The ALJ's Evaluation of Opinion Evidence and RFC Determination

"In all cases the ALJ is required to provide rationale in the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings." *Melissa S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *3 (N.D.N.Y. Apr. 12, 2022) (quoting *Pamela P. v. Saul*, No. 3:19-cv-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020)); *Booker v. Astrue*, No. 1:07-cv-464 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d at 587).  "The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'" *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Here, the ALJ found PA Gdovin's opinions unpersuasive and "after careful consideration of the entire record," including Plaintiff's "positive response to treatment and his activities,"

found through the date last insured, Plaintiff had the RFC to perform the full range of sedentary work. (T. 15-17.)

Initially and contrary to Plaintiff's assertion, the ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. (Dkt. No. 7 at 10-11.) The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

However, the Court finds the ALJ improperly evaluated the persuasiveness of PA Gdovin's opinions and remand is warranted on this basis. The ALJ stated:

> The medical source statements from Jonathan Gdovin, RPAC are unpersuasive (Exhibits 9F and 11F). Physician's assistant Gdovin did not begin treating the claimant until after the expiration of the date last insured (see Exhibit 9F). Thus, he had no firsthand knowledge of the claimant's condition prior to the date last insured. Moreover, his opinions are not well supported by reference to underlying examination findings or clinical findings, and they are inconsistent with the evidence discussed above regarding the claimant's treatment history prior to the expiration of the date last insured, response to treatment prior to the expiration of the date last insured, and activities of daily living.

(T. 17.) Plaintiff argues the ALJ failed to acknowledge any content of the opinions, including that the opinions were retrospective, and rejected the opinion based upon the date and conclusory reasons. (Dkt. No. 7 at 11.) The Court agrees.

13

First, it does not appear the ALJ recognized the retrospective nature of PA Gdovin's opinions. "The Second Circuit 'has observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the date up to which the earning requirement . . . was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date.'" *Tari L. E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-1283 (DEP), 2023 WL 395189, at *4 (N.D.N.Y. Jan. 24, 2023) (quoting *inter alia Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991)); *see also Karen S. v. Comm'r of Soc. Sec.*, No. 20-CV-0960 (CFH), 2022 WL 462086, at *9 (N.D.N.Y. Feb. 15, 2022) (noting "medical evidence obtained after a plaintiff's [date last insured] can be used to show that a plaintiff was disabled prior to that date as long as it pertains to already-existing impairments") (internal quotation marks and alterations omitted); *Zaida B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-09748, 2022 WL 3867523, at *5 (S.D.N.Y. June 1, 2022) (noting opinion evidence "rendered after the date last insured, can nevertheless be indicative of 'some enduring, preexisting, or even progressive condition, the permanent or variable nature of [the] diagnoses and ailments, and, perhaps, any potential intervening aggravating factors possibly accounting for some worsening of her condition.'") (quoting *Martinez v. Massanari*, 242 F. Supp. 2d 372, 378 (S.D.N.Y. 2003)), *report and recommendation adopted*, 2022 WL 3867903 (S.D.N.Y. Aug. 30, 2022).

Second, the ALJ's supportability analysis falls short. (T. 17.) The ALJ summarily states PA Gdovin's "opinions are not well supported by reference to underlying examination findings or clinical findings[.]" (T. 17.) Insofar as the ALJ takes issue with the form itself, "an opinion by a treating provider should not be discounted solely because it is provided on a check-box form." *Kimberly W. v. Kijakazi*, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *4 (N.D.N.Y. Feb. 24, 2022) (citing *Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir. 2022)). Rather, "the

14

nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue—not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]" *Colgan*, 22 F. 4th at 361.

As set forth above, the ALJ is required to discuss "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). In this case, the ALJ's conclusory analysis of the consistency factor "precludes the Court from undertaking meaningful review" of the ALJ's decision." *Jesse R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL 813918, at *7 (N.D.N.Y. Mar. 17, 2022) ("The ALJ did not explain whether the substance of [the treating psychologist's] opinion was supported by his treatment notes or psychiatric evaluations . . . . This omission amounts to legal error where the ALJ did not sufficiently 'explain how [h]e considered the supportability' of [the] opinion with his objective medical evidence and the Court cannot otherwise glean the ALJ's rationale in finding the opinion unsupported.").

Indeed, there is no discussion of "the objective medical evidence and supporting explanations" presented by PA Gdovin to support his opinions. (T. 17.) The ALJ does not consider whether PA Gdovin's opinions were supported by his own records. *See id*. The decision contains no explanation as to how those records undermine the opinions of PA Gdovin. *See id*. *See, e.g.*, *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding where the ALJ "did not examine what [the physicians] used to support their opinions and reach their ultimate conclusions"); *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *14 (N.D.N.Y. June 27, 2023) (remanding where the ALJ "did not articulate consideration of whether FNP Engler's or Dr. Oranu's treatment notes that were available in the record supported their opinions").

"[W]ithout some clear discussion of the supportability factor[,] the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review." *Nicole L. v. Kijakazi*, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022); *Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *4 (S.D.N.Y. Jan. 29, 2021) ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021); *see, e.g., also Davis v. Comm'r of Soc. Sec.*, No. 20-CV-4282, 2024 WL 278425, at *4 (E.D.N.Y. Jan. 25, 2024) (remanding where the ALJ did not adequately analysis the supportability factor).

Because there is, at least, a reasonable likelihood that a different result could have been reached if the ALJ had properly evaluated PA Gdovin's opinions pursuant to the new regulations, remand is appropriate. *See Leto v. Comm'r of Soc. Sec.*, No. 22-CV-00863, 2023 WL 2344936, at *16 (S.D.N.Y. Mar. 3, 2023) (procedural error was not harmless where finding of greater limitations could result in determination that plaintiff was unable to work); *see also Sawicki v. Comm'r of Soc. Sec.*, No. 21-CV-02093, 2023 WL 5164212, at *11 (S.D.N.Y. Aug. 11, 2023).

In sum, because the ALJ failed to fully and appropriately consider PA Gdovin's retrospective opinions pursuant to the new regulations, remand is appropriate. Although his opinions contain limitations that, if accepted, would likely be disabling, the evidence in this case is not so persuasive of disability that remand for further proceedings would serve no useful purpose. Notably, it is not clear that the record supports that the ALJ would find PA Gdovin's opinions persuasive. This is also a case in which further development of the record, such as an

opinion from a medical expert, might be helpful given the prior administrative findings of the non-examining state agency physicians.

Because the Court recommends the District Court remand this matter for the ALJ to assess the supportability of PA Gdovin's opinions, and because that assessment could alter the ALJ's RFC and step four determinations, the Court declines to address Plaintiff's remaining arguments. *See, e.g.*, *Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-00643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments.")); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted).

On remand, the ALJ should evaluate the persuasives of PA Gdovin's medical source statements, evaluate Plaintiff's daily activities in the context of the broader record, and further develop the record as appropriate. *See Briselida R. v. Comm. of Soc. Sec.*, 5:22-CV-01290 (TJM/ML), 2023 WL 9600841, at *11 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 5:22-CV-1290 (FJS/ML), 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) ("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *report recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

## VI.   CONCLUSION

**WHEREFORE**, fore the reasons stated herein, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) be **GRANTED**, Defendant's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**, and the Commissioner's deicison be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 20, 2024
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge